Good morning, if it pleases the court, Paul Rossi for appellants. I'd like to reserve five minutes for rebuttal. That's fine. Has the Harrisburg Council now voted to increase the earned income tax? Yes, they have. To what number? I don't know what the number of the earned income tax is. I think they were told to do a 1.5. Did they do 1.0 or 1.3? I know they did a negotiated settlement after the mandamus action was imposed upon them by commonwealth court. So the mandamus action is now moot? That mandamus action is moot. It's resolved. However, the threats of mandamus, the legal obligations under the Act 47 amendments and the further threat of mandamus and the consequence. What would be the further threat? I mean, there's no threat of contempt from the August 2, 2012 order, is there? No, there is not, Your Honor. Correct. Because, I mean, obviously, as you know, the whole issue here is going to be standing. Yes, correct. Is there any – there's no motion for contempt out there at all, right? No, correct. But the commonwealth cannot amend a law to intentionally impose individual legal obligations on elected officials and subject them to individual civil penalty for noncompliance through the power of mandamus. You keep using the modifier individual. Well, it's – and it's because they are individuals and the appellants – appellees have – They're individuals elected to public office. Correct. But – Which is an official capacity in which they're acting. In fact, mandamus can only lie with respect to them acting in their official capacity. Correct. But they are – they suffer the penalty if they fail to – ultimately, if they fail to comply. Isn't that a very, very speculative injury, conditioned on a series of events? And if so, I mean, how do you ever demonstrate standing where such a concatenation of events would be required? Well, first of all, mandamus was brought against them. They are under constant threat of mandamus. They are under constant – The threat isn't of mandamus, though. The threat is of violating the mandamus order, being – then being found in contempt, and then being subjected to certain penalties pursuant to that violation. Am I – I mean, actually, it's even more than that. Receiver would have to issue another order. It would have to go unheeded. The receiver seeks a writ of mandamus. The writ of mandamus is granted. The Harrisburg officials refuse to comply with your clients. Correct. The receiver returns to the court seeking contempt, and the court holds those officials in contempt. I mean, that's like seven things that have to happen. And we have already started going down some of those paths already, and my clients have consistently opposed – Well, you can always come back here. But they don't have – but living under that threat, Your Honor, and the compulsion in a manner which is not imposed on any other elected official of a third-class city, and it's being imposed upon individuals only because the legislature, in order to circumvent the state constitutional provisions, granted to the governor the unfettered discretion in 602B to declare a fiscal state of emergency. Didn't we say in Storino, I mean, your injury is not imminent if it's explained by the word if, and Judge Ambrose just went through a whole litany, if this happens, if that happens, if that happens. How is that – isn't injury, in fact, speculative at this point? But they are – what's not speculative is the legal obligation to comply at all times with the receiver. And that obligation is not imposed on any other elected official of a third-class city in the Commonwealth of Pennsylvania. And that state of affairs is present because the legislature delegated to the governor the unfettered – True, but injury in their personal capacity is a lot of ifs away, right? It's not. Because in the act, if they don't comply – first of all, they don't actually get a hearing in Commonwealth court. It's mandatory that Commonwealth court grant the mandamus. And all the receiver has to show is that his I's were dotted and his T's were crossed in order to ask for the mandamus and get the mandamus, and it has been continually threatened against the – my plaintiffs in the course of their duties. And the penalty is not against the city of Harrisburg. It's against them. They are – they are threatened with civil penalty and – But it's against them in their official capacity. Correct. It's against them. I would like – correct. In their official capacity. But they bear the burden of the penalty, not the city of Harrisburg. Let me circle back to Judge Smith's point. We've got a complaint before us. There's no allegation in the complaint or elsewhere that I know of that's currently in the record indicating that any of the events that I talked about, the seven things that        I don't know. I don't know. I don't know. I don't know. I don't know. I don't know. I don't know. Let alone all of them are before us. The one item before us has been taken care of in a – an August 2012 order. In the complaint, we – first of all, the threat mandamus and the actual mandamus action against the clients took place after the complaint was filed. Okay. In the complaint – at the time the complaint was filed, we alleged all the facts and the – and – and which – which – which demonstrate the standing that the plaintiffs have owing to the fact that they – and they alone – Are you suggesting that the plaintiffs can be liable in their individual capacity? And you should get a mandamus for that? Or you can be – No, I'm not. It's in their official capacity, Your Honor. And – It has to be. Yes. But they bear the burden of the penalty. But prior to Act – prior to the Act 47 amendments, Your Honor, the principal reason why a city goes into Act 47 is two – two purposes. One is to get emergency cash from the Commonwealth, and two, to get technical assistance in drafting a plan to get out of their fiscal mess. That fiscal plan is subject, before the Act 47 amendments, to the free vote of the – of the – of the municipality city council. So – Back – back before the amendments. Before you sit down, you've got to tell us, what's the imminent harm and injury that's alleged before us today? The harm is plaintiffs are – are – under the Act, legal obligations are imposed upon them, upon which the Act imposes the threat to them in their – in their – in their legal obligations. They're the ones that bear the burden of any penalty for failure to comply. Okay. But how does that give them standing that something could come up in the future? That's – that's speculation, and it's by definition. I disagree. It's not speculation, because they have been subjected to mandamus, and as – as late – Once before. As late as this Friday, my plaintiff, Dan Miller, was – was subjected to another order, not mandamus. They've gotten around – they sidestepped the mandamus action. But he's been – he was ordered to sign contracts that he didn't think were what's in the best interest of the city, and he's refused to sign those contracts. And the remedy – In the words of our former Chief Judge, Ed Becker, that's the next case. I disagree. I – I – In the Clapper case, they added a new – maybe a new term to our lexicon. Yeah. Injury must be certainly impending. It's not certainly impending. I disagree, Your Honor. The constant legal obligation to comply and to capitulate is the harm, because it is imposed upon them in combination with the certain threat of mandamus. The receiver has used the power in the past, he's made no – no bones that he intends to use it in the future. But contempt is what gets you standing, though, right? And it's a constant threat. Pardon me? Contempt is what you got to get to, right? I disagree. Living under that – those legal obligations, when you are – under the state constitution and application of the federal equal protection, that you should be free of that, because nobody else is, that's the injury. All right. Why don't we hear from your opposing counsel, and then we'll get you back on record. Thank you. Mr. Kirkpatrick. Good morning, Your Honors. May it please the Court. I'm Sean Kirkpatrick on behalf of the Pennsylvania Office of Attorney General. Let me just ask a question at the – who can challenge Act 47? Private citizens, Your Honor, if injured. If they can demonstrate through allegations in a complaint, can challenge Act 47. And quite frankly, officials, if they bring the challenge in Pennsylvania's courts, can challenge Act 47. At their heart, appellants main – and this sort of goes to substantive arguments, which obviously aren't on appeal, but their main complaint is that the amendments to Act 47 violate the Pennsylvania constitution. I would think that the proper forum for that would be the Pennsylvania courts anyway. So it is not as though there are no forums available. The state courts remain open to these challenges. If there were a future order that was not obeyed and the person were held in contempt, what would the person's remedy be under state – in the state courts? If the – if I'm – Your Honor, if I understand the question, the – Well, for future noncompliance with the writ of mandamus under Act 47, what would the – what would their – what could they do? Well, they could go in and they could challenge the contempt order. I would imagine before contempt, the court – and in this case, Judge Ledbetter is – Commonwealth Court Judge Ledbetter is the one handling the ongoing case and supervising the receivership. Is there any possibility of fines against the official who doesn't comply with an order? Yes, Your Honor. The Pennsylvania courts have all equitable remedies to enforce their own orders. But not only is that speculative and not only are those allegations not actually in the complaint and were not actually part of the motion to amend the complaint, but I would go one step further and say that those injuries are still official capacity because it is by the very nature of the office that this is even occurring. It is not a situation in which the receiver is going and taking, for example, the mayor's house. That would be obviously an injury to the private citizen. It is a command that an official in their official capacity comply with the receiver. That's by its very nature. A mandamus is by its very nature only touches upon official capacity. As counsel for the appellant said, really because the writ of mandamus is now moot, as Your Honors have recognized, it's the constant legal obligation to comply with the receiver. That, again, is by its very nature something that only touches them in their official capacity. I surmise, from what your opposing counsel has said, that this is a continuing situation that is likely to recur, and that's the reason that we should consider it now. How do you respond to that? Well, this court in Storino requires that the injury must not only be actual and imminent, but not the result of an independent action of some third party, not before the court. The injury that they, in order to try to create an injury that touches the appellants in their case, is way down the road of speculation. And assume that in every case, the Commonwealth Courts, in trying to rectify a contempt of its orders, is going to fine them or is going to imprison them. There are obviously many equitable powers that a court possesses beyond just fining. For example, the court could simply order that the contracts be signed by the receiver. And forego the city official who is obstructing the court's order. That's what the court may do sometime in the future, is not only not this case, but is the type of speculation that this court in Storino warns against. Does the court actually have the authority to have someone else sign on behalf of the council? That's a good question, Your Honor. This is new, and the Commonwealth Court is sort of going into new territory. I don't know how the Commonwealth Court would address it. I think that under Act 47, the receiver is granted certain powers. The whole point of these amendments, the whole point of the receivership, is that there is a fiscal emergency. How much longer is this receivership going to be around? I believe that the current term of the receivership ends December 1st. I believe that... It can be extended, of course. Well, yes. And they filed a motion to extend it. I think it is something like two or three years extension. I'm not sure exactly what the receiver is asking for an extension. But the thought, quite frankly, is that for another year. That hopefully by mid-December, quite frankly, the bulk of... So is what you're saying, they move for two or three years, but in all likelihood, they'll seek to cease it, I suppose, once things are in place? Absolutely, Your Honor. The whole point of the receivership is that under Act 47, a municipality enters Act 47 with a declaration of fiscal distress. When that becomes fiscal emergency, then the receivership portions of Act 47 come into play. As soon as that emergency is no longer in place, and in this case, the emergency is the crippling debt with the incinerators. As soon as that's not in place, the idea is we come out of receivership, just goes back into financial distress, and then all of the benefits of Act 47 continue. That motion before the judge, is that a consent motion? I doubt it would be. But in other words, it's possible the judge would say no more receivership, in which case... Oh, absolutely, Your Honor. Okay. Well, absolutely. And in this case, the writ of mandamus, they asked for two things. They asked for a EIT, earned income tax increase, but they also asked for money for a director of communications. And the Commonwealth Court says, well, I'm going to give you the first one because it's absolutely necessary, but I'm not going to give you the second. I'm sure I'm stating the obvious here, but as someone who lives in a Pennsylvania-distressed city, Altoona, one pursuing the Act 42 options right now... Act 47. Act 47 options, but not having reached a point of receivership. It seems obvious to me that as we feel our way along in Pennsylvania with the various options and how the application of the Act and its options play out, once a receiver is appointed, the powers that receiver takes on necessarily require a concomitant diminution in the powers of the municipality's governing body. And that's where the tensions occur, and that's the evolution we're all going to have to work out. And it seems to me it's also what's given rise to the litigation that has now reared its head twice with respect to the question raised in this litigation and the prior litigation raised by parties. Is that a fair assessment? Absolutely, Your Honor. At the end of the day, the political subdivision standing doctrine precludes a municipality from suing its parent state, under the 14th Amendment, because the idea is its powers and immunities are whatever the state decides it to be. That sort of... Political subdivisions exist only by virtue of what the Commonwealth constitutionally or by statute has originally chosen to delegate. Absolutely, Your Honor. And different cities of different classes have different structures. So it comes down to, in this, well, Pennsylvania decided that under its old Act 47, there was a possibility that once a city entered, if some of its public officials refused to follow the plan, it just sort of ended, and the citizens of that municipality were stuck. And so, Act 47 was amended, a receiver was put into place, and the Commonwealth determined that in that emergency situation, the receiver would have certain powers under the guidance and supervision of the Commonwealth Court. The receiver can't just go it alone. He has to actually go to the Commonwealth Court and get writs of mandamus, which, again, only apply to appellants in their official capacity. Any further questions? Actually, why not allow them to amend their complaint? The court below refused. Well, Your Honor... I mean, they were saying, we're going to actually put more detail in about the jeopardy that they'd... The injury that they'd face. Well, yes, Your Honor. But if you look at the actual motion to amend the judgment, the appellants proffered three amendments, one of which was to add Dan Miller as a plaintiff, one of which was to add John Campbell as a plaintiff, and one to which to add City Council as a plaintiff. And in all those cases, it was futile because, again, the political subdivision standing doctrine precludes standing in this case. So the answer really is, it's futile. That's what the district court determined. It's futile, and this is under... That determination is under abuse of discretion, and quite frankly, they didn't ask for some of this. Also, the injury that they proffer in their briefing here is now moot, so that wouldn't save them anyway. Thank you very much. Thank you, Your Honor. Mr. Rossi? I'd like to quickly respond to a couple points. Opposing counsel suggested that the courts of the Commonwealth are open on this issue to my plaintiffs. That's not true because the state constitutional issue has been, I think at least on two occasions, been briefed and motioned to Judge Ledbetter, and she simply is refusing to rule on those issues. How does that make the courts not open? Well, I'm just correcting the record. How does that make the courts not open? We don't have access to a process in the state courts to get an adjudication of the constitutionality under state law. You wouldn't be briefed if you didn't have access. I mean, I don't understand your position. All rulings on the state constitutionality issue, which isn't before this court because we're alleging the equal protection violation as a result of the state laws that are not being equally applied, but they're simply not being ruled on. And it's apparent to the plaintiffs that this entire litigate, this entire financial situation is going to be resolved, and these issues are not being ruled on. And for two years now, these issues have not been ruled on by commonwealth court. So the federal issue is the only issue that can be brought before to disentangle what is going on to these plaintiffs in this city in violation of their rights under the state constitution and under the federal constitution, equal application of those state constitutional provisions. And the harm is the obligation, the daily obligation to capitulate on threat of personal financial and or deprivation of liberty. And that has to be a harm. And with respect, I know it's a couple steps, but it's not speculative because the mandamus action has been already filed against them. There's a brand new court order for Dan Miller to comply, and the commonwealth court doesn't have discretion in not granting the mandamus. It's just a matter of the receiver filing the papers with the commonwealth court in order to get the mandamus. There's no due process with respect to the mandamus action. That's not before this court either. But to suggest that we have access to state courts to raise these issues, I think is not an accurate reflection of the reality right now in the commonwealth of Pennsylvania. The other issue I would like to raise is judges all the time are disciplined in their official capacity, and they are, say, judges of courts of the commonwealth, and they have standing to file a section 1983 action against the Supreme Court of Pennsylvania. This idea that an elected official who is being harmed in pursuant of the office that he holds is always standing in the shoes of the municipality is just not right. You just said, is being harmed, which is internally inconsistent with the facts here. I disagree, Your Honor. The harm is the obligation to comply, an obligation that is not imposed on any other elected official in the commonwealth of Pennsylvania. And they can't show that it ever will be because... pursuant to the act. Yes, because the act was drafted, by the way, precisely for Harrisburg. There will be testimony if we get to court. And your point is? The point is this is... It's the capital of the commonwealth. This is special legislation in violation of the Constitution that imposes unique obligations on my plaintiffs under threat of mandamus action and personal liability. That is not imposed on anybody else. I submit that is a harm given these facts. All right. Thank you. Thank you very much. Thank you to both counsel.